IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AIRLINE PROFESSIONALS ASSOCIATION, TEAMSTERS LOCAL UNION No. 1224, | : : : : | Case No. 1:12cv569 Chief Judge Susan J. Dlott |
| Plaintiff, | : : | |
| v. | : : : | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| ABX AIR, INC., | : : | |
| Defendant. | | |

This is an action for injunctive and declaratory relief brought pursuant to the Railway Labor Act ("RLA), 45 U.S.C. § 151a *et seq*. (1976), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (1976).  Plaintiff, the Airline Professionals Association, Teamsters Local Union No. 1224 (the "Union"), claims that ABX Air, Inc. ("ABX") engaged in actions that are contrary to the RLA, the Federal Aviation Regulations (the "FARs"), 14 C.F.R. § 91 *et seq*., ABX's company manuals, and the parties' collective bargaining agreement when it required that Captain Morten Homme sign a Letter of Commitment in order to keep his job at ABX.  Am. Compl., Doc. 4.  The Union seeks a declaration that ABX has violated the FARs, the "public policy [of the] United States," ABX's company manuals, and the collective bargaining agreement.  The Union also seeks an injunction prohibiting ABX from engaging in certain conduct and ordering that ABX reinstate Captain Homme with fully back pay, seniority, and benefits.  ABX moves to dismiss the Amended Complaint in its entirety.  Doc. 10.  For the following reasons, ABX'S Motion to Dismiss is **GRANTED**.

I.  BACKGROUND

ABX operates as a common carrier, delivering packages and freight by air.  Am. Compl. ¶ 4, Doc. 4 at Page ID # 33.  ABX and the Union are parties to a collective bargaining agreement, which went into effect November 4, 2009 and continues through December of 2014, pursuant to which the Union is the collective bargaining representative of various ABX employees, including pilots (the "CBA").  *Id*. at ¶ 3, 5.

 On June 16, 2012, Captain Morten Homme and First Officer Robert Martin were assigned to fly a cargo flight between Osaka, Japan and Shanghai, China on behalf of Japan Airlines ("JAL").  *Id*. at ¶ 7.  While performing his preflight duties, Captain Homme discovered that the assigned alternative airport was not located in the plane's computer-based flight management system.  *Id*. at ¶ 8.  Officer Martin located the assigned alternative airport using latitude and longitude from the plane's onboard approach plates.  *Id*.  Captain Homme became concerned with the safety of the flight once he discovered the location of and weather conditions at the assigned alternate airport.  *Id*.

Captain Homme contacted the flight control dispatcher, expressed his concerns, and requested that flight control assign a different alternate airport.  *Id*. at ¶ 8–10.  Captain Homme was advised that changing the alternate airport would require offloading of freight.  *Id*. at ¶ 9.  Flight control then assigned a new alternative airport.  *Id*. at ¶ 12.  To accommodate the additional fuel needed for the new alternate airport, JAL removed cargo from the flight.  *Id*. at ¶ 13.  The flight then operated directly to Shanghai without the need to divert to the alternate airport.  *Id*.

Shortly thereafter, Captain Homme was requested to submit a safety debrief to ABX's director of flight operations.  *Id*. at ¶ 14.  On June 18, 2012, Captain Homme was removed from

2

the remainder of his flight assignment in Japan. *Id*. at ¶ 15. Captain Homme was then required to attend hearings at ABX's Wilmington, Ohio location on June 22, 2012 and June 29, 2012. *Id*.

By letter dated July 17, 2012, Captain Homme was informed that ABX disagreed with his assessment of the alleged safety issues underlying his requested change in alternate airports. *Id*. at ¶ 16. ABX requested that Captain Homme execute a "Letter of Commitment" acknowledging "that [he] failed to meet [ABX's] reasonable expectations by causing the off-load of freight from JAL Flight 6589 by insisting upon a change in the alternate airport." *Id*. Ex. D, Doc. 1–4 at Page ID # 19. ABX also informed Captain Homme that he would be required to undertake additional training. *Id*. ABX informed Captain Homme that he would be terminated unless he signed the Letter of Commitment by July 19, 2012. Am. Compl. ¶ 16, Doc. 4 at Page ID # 35. On July 20, 2012, Captain Homme notified ABX that he was willing to attend additional training but he was not willing to sign the Letter of Commitment because he believed he acted reasonably on the night in question. *Id*. Ex. E, Doc. 1–5 at Page ID # 20. Because Captain Homme refused to sign the Letter of Commitment, ABX terminated his employment. *Id*. ¶18, Doc 4 at Page ID # 36. On July 27, 2012, Captain Homme filed a grievance under the CBA. ABX's Mot. to Dismiss Ex. 2, Doc. 10-3 at Page ID # 114.[1]

On July 26, 2012, the Union filed this action seeking declaratory and injunctive relief. The Amended Complaint, filed August 13, 2012, contains two counts. The first count states that ABX's actions toward Captain Homme, i.e., requiring him to admit to wrongdoing or be terminated, are contrary to (1) "the public policy of the United States as set forth in the FARs"

---

[1] The Grievance Fact Sheet is attached to ABX's Motion to Dismiss. Because the facts underlying the grievance are referred to into the Amended Complaint and are central to the Union's claims, the Court will consider this document without converting the motion into one for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

(2) "a crewmember's obligations under the FARs"; (3) ABX's Flight Operations Manual ("FOM") and ABX's Aircraft Operating Manual ("AOM"); and (4) "the crewmember's obligations under the [CBA]." Am. Compl. ¶24, Doc. 4 at Page ID # 37. The second count states that ABX's actions "attack the integrity of the grievance and arbitration procedures contained in the [CBA] as required by the RLA and has a 'chilling effect' on other crewmembers reasonably exercising their authority under the FARs and the Company's regulations to conduct operations which will further, to the fullest extent possible, the safety of air transportation." *Id*. at ¶29.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation or citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court does not require "heightened fact pleading of specifics, but only enough facts to state

4

a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

#### A. Count One

In Count One, the Union claims that by requiring Captain Homme to admit wrongdoing or face termination, ABX violated: (1) the "public policy of the United States as set forth in the FARs"; (2) "a crewmember's obligations under the FARS"; (3) ABX's FOM and AOM; and (4) "the crewmember's obligations under the [CBA]." Am. Compl. ¶24, Doc. 4 at Page ID # 37. ABX moves to dismiss this claim, arguing that (1) there is no private right of action to enforce the FARs; (2) there is no cause of action for violation of a company's manuals; and (3) to the extent the Union's claim is based upon an alleged violation of the CBA, the System Board of Adjustment has jurisdiction over the dispute.

##### 1. No Private Right of Action Exists to Enforce the FARs.

The Federal Aviation Agency ("FAA") defines a pilot's duties and responsibilities in the FARs. 14 C.F.R. § 91.1 *et seq*. As relevant here, Section 91.3(a) of the FARs provides:

> The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.

14 C.F.R. § 91.3(a). Similarly, section § 121.537(e) provides:

> Each pilot in command of an aircraft is responsible for the preflight planning and the operation of the flight in compliance with this chapter and the operations specifications.

14 C.F.R. § 121.537(e).

The Union contends that Captain Homme exercised these duties on the June 16th flight when he expressed concern about the alternate airport and requested that flight control assign him a different alternate airport. The Union claims that ABX undermined sections 91.3(a) and 121.537(e) when it required that Captain Homme sign the Letter of Commitment acknowledging "that [he] failed to meet [ABX's] reasonable expectations by causing the off-load of freight from JAL Flight 6589 by insisting upon a change in the alternate airport." Am. Compl. Ex. D, Doc. 1-4 at Page ID # 19.

ABX correctly argues, however, that the Union's alleged cause of action pursuant to sections 91.3(a) and 121.537(e) is not proper because no private right of action exists to enforce the regulations. "Federal regulations cannot themselves create a cause of action; that is a function of the legislature." *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993) (citing *Stewart v. Bernstein*, 769 F.2d 1088, 1092-93 n. 6 (5th Cir. 1985)). Although the Sixth Circuit has not squarely addressed whether the FARs can be enforced by a private right of action, a developing consensus among the federal courts hold that a private right of action does not exist. *See Brown v. Byard*, 600 F.Supp. 396, 397 (S.D. Ohio 1984) ("The Federal Aviation Act clearly does not expressly provide for a private cause of action for violations of the Act."); *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Bd., et al.*, 486 F.Supp.2d 640, 656 (E.D. Ky. 2007) ("[T]he federal aviation statutes do not provide a private cause of action."); *Murphy v. C.W.*, No. Civ.A. 03–5641, 2004 WL 2496843, at *5 n. 15 (E.D. Penn. Nov. 4, 2004) (granting summary judgment on claim alleging FARs violation because party "failed to adduce any authority establishing a private right of action under that regulation."). Thus, to the extent that Count One of the Union's Amended Complaint is based on a violation of the FARs, that claim is dismissed.

2. <u>No cause of action exists to address alleged violations of the FOM and AOM.</u>

Also as a part of Count One, the Union contends that ABX's conduct ("in requiring Captain Homme to admit that he did not reasonably exercise his Captain's authority and . . . requiring him to sign a letter of commitment or face termination") was "contrary to the Company's FOM and AOM." Am. Compl. ¶ 24, Doc. 4 at Page ID # 37. ABX correctly argues that no cause of action exists for an alleged violation of a company manual. The Union does not address this argument in its opposition to the Motion to Dismiss. Because the Union has failed to address this argument and, consequently, has not provided the Court with any authority establishing a cause of action for an alleged violation of a company manual, to the extent Court one is based on such a contention, that claim is dismissed.

3. <u>CBA</u>

The Union also contends that ABX's conduct is contrary to "the safety requirements of the collective bargaining agreement." *Id*. Specifically, the Union cites to Article 1, Section B of the CBA, which provides:

> The purpose of this Agreement is, in the mutual interest of the Company, the Union, and the Crewmembers in the employ of the Company, *to provide for the operation of the Company under methods which will further, to the fullest extent possible, the safety of air transportation*, the efficiency of operation, and the continuation of employment of Crewmembers under conditions of reasonable working conditions and proper compensation. It is recognized to be the duty of the Company, the Union, and the Crewmembers to cooperate fully for the attainment of these purposes.

Doc. 4-7 at Page ID # 53 (emphasis added). The Union contends that ABX undermined this provision of the CBA when it required, as a condition of Captain Homme's continued employment, that he admit that he did not reasonably exercise his captain's authority on the June

7

16th flight. ABX contends that the Union's argument amounts to a "minor dispute," which must first be brought through the RLA arbitral process. The Court agrees.

The RLA governs labor relations in the airline industry. *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 248 (1994); 45 U.S.C. § 181 (extending application of the RLA to carriers by air). The RLA "establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' ... of disputes." *Id*. at 252 (quoting 45 U.S.C. § 151a). "The RLA divides such disputes into two categories: major and minor. Major disputes concern the formation of collective bargaining agreements, whereas minor disputes deal with the interpretation of existing CBAs." *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012) (citing *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n.*, 491 U.S. 299, 302–303 (1989)). A "minor dispute," on the other hand, is a dispute arising out of the interpretation of an existing CBA. *Airline Professionals Ass'n, Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 414 (6th Cir. 2005) ("ABX I"). Minor disputes contemplate the existence of a CBA already concluded or a situation in which no effort is being made to bring about a formal change in terms or to create a new CBA. *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945). "The claim is to rights accrued, not merely to have ones created in the future." *Id*.

The distinction between "major" and "minor" categories has distinctive procedural implications. *Airline Professionals Ass'n, of the Int'l Bhd.of Teamsters, Local Union 1224 v. ABX Air, Inc.*, 274 F.3d 1023, 1028 (6th Cir. 2001) ("ABX II"). In the context of major disputes, the "RLA mandates a lengthy process of negotiation and mediation before either party may resort to self-help." *Id*. at 1028 (citing *Conrail*, 491 U.S. at 302-03). During that process, the parties must maintain the "status quo" with respect to rates of pay, rules, and working conditions (*see* 45 U.S.C. § 152, Seventh; 45 U.S.C. § 156), and the "district courts have subject matter

8

jurisdiction to enjoin a violation of the status quo pending the exhaustion of the required procedural remedies." *ABX I*, 400 F.3d at 414 (citing *Consol. Rail Corp.*, 491 U.S. at 303). Minor disputes, in contrast, are "subject to compulsory and binding arbitration" before the System Board of Adjustment created by the parties in their labor contract. *ABX II*, 274 F.3d at 1028; 45 U.S.C. § 184. Significantly, "the RLA precludes the federal courts from granting relief on minor disputes that have not first been brought through the RLA arbitration process." *Emswiler*, 691 F.3d at 789.

Here, to the extent that Count One alleges that ABX breached Article 1, Section B of the CBA, this claim fits squarely within the minor dispute category. Consequently, this claim must be pursued pursuant to the minor dispute resolution mechanisms of the RLA and Count One must be dismissed.[2]

B. Count Two

In Count Two, the Union claims that by requiring Captain Homme to admit wrongdoing or face termination, ABX has "attack[ed] the integrity of the grievance and arbitration procedures contained in the [CBA] as required by the RLA and has [created] a 'chilling effect' on other crewmembers reasonably exercising their authority under the FARs and the Company's regulations to conduct operations which will further, to the fullest extent possible, the safety of air transportation." Am. Compl. ¶ 29, Doc. 4 at Page ID # 39. ABX moves to dismiss this claim, arguing that the crux of Count Two is the propriety of Captain Homme's termination, which is a minor dispute governed by the CBA.

---

[2] In fact, the parties have already begun this process; Captain Homme filed a grievance with the System Board of Adjustment on July 27, 2012. Grievance Fact Sheet, Doc. 10-3 at Page ID # 114.

The Court will dismiss Count Two of the Amended Complaint.  First, the Court agrees with ABX that this grievance is properly characterized as a minor dispute.  ABX "has the burden of demonstrating that this case involves a minor dispute under the RLA, but that burden is not heavy."  *ABX I*, 400 F.3d at 414.  As the Supreme Court has explained,

> [I]f an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (i.e., the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.

*Consol. Rail Corp.*, 491 U.S. at 310.

Here, the gravamen of Count Two is a challenge to Captain Homme's termination and, specifically, ABX's use of the Letter of Commitment as a form of discipline.  *See* Am. Compl. ¶¶ 27 and 28, Doc. 4 at Page ID # 38.  In fact, the Amended Complaint expressly alleges violations of the CBA.  *See id*. ¶ 27 ("[C]onditioning continued employment of Captain Homme upon the requirement of his signing a letter of commitment . . . constitutes a violation by ABX of its obligations under the RLA and the collective bargaining agreement.").  ABX points to Articles 5 and 6 of the CBA, which among other things, explicitly permit ABX to "suspend without pay or discharge[]" crewmembers."  *See* CBA, Article 5, Doc. 10-2 at Page ID # 103.  ABX's use of the Letter of Commitment as a form of discipline, therefore, is arguably justified by the written and implied terms of the CBA.  Accordingly, this dispute is a minor one for purposes of the RLA and Count Two must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, ABX's Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) (Doc. 10) is **GRANTED.**

IT IS SO ORDERED.

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court
